Filed 7/31/24  Singh v. Moolani CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| SUKHJIT SINGH et al., <br><br> Plaintiffs, Cross-defendants and Respondents, <br><br> v. <br><br> RAMESH KUMAR MOOLANI et al., <br><br> Defendants, Cross-complainants and Appellants. | D081694 <br><br><br> (Super. Ct. No. 37-2022-00002633-CU-BT-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Keri G. Katz, Judge.  Affirmed.

David A. Kay for Defendants, Cross-complainants and Appellants.

Gregor Law Offices and T. Steven Gregor for Plaintiffs, Cross-defendants and Respondents.

# I. INTRODUCTION

Colton Health, LLC (Colton) sued its former employees, Ramesh Kumar Moolani (Moolani) and Ignacio Iturbe (Iturbe), claiming they

improperly left its oncology practice to establish a competing medical practice known as Ramesh Kumar Moolani, M.D., Inc. (Moolani Inc.).  In response to a letter Colton sent to the local medical community describing the dispute, Moolani, Iturbe, and Moolani Inc. (collectively Appellants) filed a cross-complaint against Colton and two of its officers, Sukhjit Singh Ghuman (Ghuman) and Ray Kahn (Kahn), alleging defamation and improper business practices.  Colton, Ghuman, and Kahn then filed a special motion to strike the cross-complaint under the anti-SLAPP statute,[1] which the trial court denied against Colton and granted for Ghuman and Kahn.  Appellants now seek review of the ruling favoring Ghuman and Kahn, challenging the trial court's application of both the litigation privilege and the anti-SLAPP statute's commercial speech exemption.  Finding no error, we affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Colton initiated this case on January 21, 2022, by filing a complaint against Appellants and several other individuals for breach of contract, misappropriation of trade secrets, intentional interference with contractual relationships, intentional interference with prospective economic advantage and unlawful business practices.  In its complaint Colton alleged it operated a medical practice providing care and treatment to cancer patients.  Colton claimed physicians Moolani and Iturbe left it to form Moolani Inc., and in the process misappropriated trade secrets, solicited clients, and took Colton

---

[1]    "Code of Civil Procedure section 425.16 provides a procedure for the early dismissal of what are commonly known as SLAPP suits (strategic lawsuits against public participation)—litigation of a harassing nature, brought to challenge the exercise of protected free speech rights."  (*Fahlen v. Sutter Central Valley Hospitals* (2014) 58 Cal.4th 655, 665, fn. 3.)  All subsequent statutory references are to the Code of Civil Procedure unless otherwise specified.

employees. Colton filed a first amended complaint on March 17, 2022, slightly modifying the business dispute details.

On June 27, 2022, Appellants filed a cross-complaint against Colton, Ghuman, and Kahn for slander per se, libel per se, trade libel, intentional interference with prospective economic advantage, and unfair business practices. Appellants based their cross-complaint primarily on a January 21, 2022 letter (2022 letter), Colton sent to medical providers in the San Diego area, describing Colton's dispute with Appellants. The 2022 letter contained these assertions, identified as false in the cross-complaint: Moolani "enticed several members of [Colton's] team"; "[d]ata was downloaded from various internal IT sources" without Colton's consent; Moolani acted "as the ringleader"; Moolani and Iturbe lack "respect for the Hippocratic oath"; Moolani and Iturbe left patients "stranded and unable to receive chemotherapy"; and Moolani and Iturbe's behavior was "immoral, illegal, and unethical." The cross-complaint further alleged that Ghuman, Colton's owner and chief executive officer, and Khan, Colton's chief financial officer, verbally relayed the 2022 letter's contents to healthcare professionals in San Diego.

On August 29, 2022, Colton, Ghuman, and Kahn filed an anti-SLAPP motion to strike the cross-complaint. Appellants opposed the motion, disputing its merits and contending that the commercial speech exemption to the anti-SLAPP statute applied.

On November 21, 2022, the trial court granted the motion as to Ghuman and Kahn but denied it as to Colton. The trial court found that the anti-SLAPP statute's commercial speech exemption applied to Colton, but not to Ghuman and Kahn because insufficient evidence supported that either Ghuman or Kahn in their individual capacities engaged in the business of

3

selling goods or services. The court then determined it unlikely Appellants would prevail on their cross-complaint against Ghuman and Kahn because the litigation privilege (Civ. Code, § 47, subd. (b)) protected the 2022 letter and related statements. Appellants' timely appeal of the order followed.[2]

## III. DISCUSSION

Appellants contend the trial court erred because (1) the commercial speech exemption applied to Ghuman and Kahn, and (2) the litigation privilege did not cover everything in the 2022 letter or Ghuman and Kahn's statements. Neither contention is persuasive.

### A. *Standard of Review*

A trial court reviews an anti-SLAPP motion "using a two-prong test: (1) has the moving party 'made a threshold showing that the challenged cause of action arises from protected activity' [citation];[3] and, if it has, (2) has the nonmoving party demonstrated that the challenged cause of action has 'minimal merit' by making 'a prima facie factual showing sufficient to sustain' a judgment in its favor?" (*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1021–1022 (*Geragos*).)

"We review a trial court's ruling on a special motion to strike pursuant to section 425.16 under the de novo standard. [Citations.] 'In other words, we employ the same two-pronged procedure as the trial court in determining

---

[2] On April 6, 2023, we dismissed Colton's appeal from the order because a finding that the commercial speech exemption applies is not appealable. (§ 425.17, subd. (e).)

[3] Appellants do not challenge the trial court's determination under the first prong.

4

whether the anti-SLAPP motion was properly granted.' " (*Geragos, supra,* 88 Cal.App.5th at p. 1020.) "We consider 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (*Ibid*.) In so doing, "we do not make credibility determinations or compare the weight of the evidence; instead, we accept the opposing party's evidence as true and evaluate the moving party's evidence only to determine if it has defeated the opposing party's evidence as a matter of law." (*Ibid*.) Similarly, "We review the applicability of the commercial speech exemption independently." (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 26.)

## B.    *The Commercial Speech Exemption*

Section 425.17, subdivision (c) defines the commercial speech exemption. It shields from the anti-SLAPP statute "any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services" if certain conditions are met. (§ 425.17, subd. (c).) "Courts are admonished to examine section 425.17 as a threshold issue *before* proceeding to an analysis under section 425.16. Section 425.17 expressly provides that speech or conduct satisfying its criteria is entirely exempt from anti-SLAPP protection *even if* 'the conduct or statement concerns an important public issue.' " (*Xu v. Huang* (2021) 73 Cal.App.5th 802, 807 (*Xu*).) This exception "must be narrowly construed, and the plaintiffs bear the burden of proving each of its elements." (*Xu*, at p. 813.)

Appellants argue that when individual owners and employees act in their own financial interests, and absent a statute barring liability, the individuals can be held responsible for statements made by the business. Appellants claim that here Ghuman and Kahn's financial interest in Colton

5

was enough to show Ghuman and Kahn were engaged in the business of selling goods or services. Appellants contend that Ghuman and Kahn met the requirements of the commercial speech exemption.

To support their argument, Appellants rely on several cases which they claim stand for the proposition that individual defendants can be held accountable for statements made by a corporate defendant. (See, *Hawran v. Hixson* (2012) 209 Cal.App.4th 256; *JAMS, Inc. v. Superior Court* (2016) 1 Cal.App.5th 984; *Simpson Strong-Tie Co., Inc. v. Gore*, *supra*, 49 Cal.4th 12; *Xu, supra,* 73 Cal.App.5th 802.) However, these cases are not persuasive because they did not address the specific issue raised here, which is the application of the commercial speech exemption to a business's owners and officers in their individual capacities. (See, *Styne v. Stevens* (2001) 26 Cal.4th 42, 57 ["An opinion is not authority for a point not raised, considered, or resolved therein."].)

Instead, we find instructive *BioCorRx, Inc. v. VDM Biochemicals, Inc.* (2024) 99 Cal.App.5th 727,[4] which confirmed that the legal distinction between a business entity and an individual is relevant in determining the application of the anti-SLAPP commercial speech exemption. In *BioCorRx*, the cross-complainant sought to apply the commercial speech exemption to both a corporation (BioCorRx) and its president and director (Granier). (*Id.* at pp. 732–733.) The cross-complainant succeeded regarding BioCorRx, based in part on its showing that BioCorRx was " 'primarily engaged in the business of selling or leasing goods or services.' " (*Id.* at pp. 735–737, italics omitted.) However, cross-complainant sued Granier in his individual capacity but neglected to explain how Grainier was engaged in the requisite

---

4     *BioCorRx* was published after the parties submitted their briefing. We requested and received the parties' supplemental responses to that opinion.

6

business activities or how BioCorRx's activities could be imputed to Granier. (*Id.* at p. 744.) Recognizing that individuals are generally distinct from corporations, the court found that the cross-complainant failed to show that the commercial speech exemption applied to Granier. (*Ibid.*)

Here, Appellants sued Ghuman and Kahn as individuals. But Appellants did not offer any evidence demonstrating that Ghuman and Kahn conducted any business in their individual capacities. (See § 425.17, subd. (c).) A limited liability company such as Colton is distinct from its owners and officers, and Appellants did not provide any evidence to show that the distinction should be disregarded.[5] (*Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 220.)

Further, according to Appellants' cross-complaint, Ghuman and Kahn acted as Colton's agents when making the challenged statements. Appellants did not offer any evidence showing that Ghuman or Kahn acted outside the scope of that agency. Mere agency is not enough to invoke the commercial speech exemption. (See, e.g., *Industrial Waste & Debris Box Service, Inc. v. Murphy* (2016) 4 Cal.App.5th 1135, 1154 [finding that the Legislature did not intend the exemption to encompass "an 'agent' or a 'person acting on behalf of' the 'person primarily engaged in the business of selling or leasing goods or services' "]; *All One God Faith, Inc. v. Organic & Sustainable Industry Standards, Inc.* (2010) 183 Cal.App.4th 1186, 1213–1217 [declining to "read section 425.17, subdivision (c) as also applying to 'someone acting on behalf of' a person primarily engaged in the business of selling or leasing goods or services"].)

---

5    For example, the distinction may be disregarded under the alter ego doctrine.

In sum, Appellants have not shown that Ghuman and Kahn, as individuals, were "person[s] primarily engaged in the business of selling or leasing goods or services." (§ 425.17, subd. (c).) As that is a necessary element for the commercial speech exemption, Appellants have failed to carry their burden in showing the exemption applies.

## C.    The Litigation Privilege

"The litigation privilege is 'relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing.' "[6] (*Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1006.) The litigation privilege applies to " 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.' " (*Geragos, supra,* 88 Cal.App.5th at p. 1031.)

Focusing on the fourth requirement regarding connection or relation to the action, Appellants assert the trial court misapplied the litigation privilege because it could only cover matters alleged in Colton's complaint. According to appellants, the 2022 letter and Ghuman and Kahn's verbal reiterations went beyond the complaint, resulting in the litigation privilege's inapplicability. Appellants claim the complaint was confined to a business dispute stemming from alleged misappropriation of information and employees, while the letter and additional statements

---

[6]    As explained in footnote 3, *ante*, issues regarding the anti-SLAPP statute's first prong are not challenged in this case.

8

added the accusations that Appellants behaved unethically, immorally, and harmed patients.[7]

This court's opinion in *Dziubla v. Piazza* (2020) 59 Cal.App.5th 140 provides guidance regarding the litigation privilege's parameters. In that case, defendant (Piazza) filed a lawsuit in Nevada challenging plaintiff's (Dziubla) lending practices. (*Dziubla*, at pp. 144–146.) Piazza published an alert to his business's 200,000 members attempting to raise money for the Nevada lawsuit, which described Dziubla as a " 'Lying, Two-Faced, Gun-Grabbing Hillary Clinton Supporting, Con Man.' " (*Id.* at p. 146.) The communication included pictures of Dziubla and his house, as well as publicized his home address. (*Ibid.*) Finding that the alert was generally privileged because it sought funding for the Nevada lawsuit, we explained that "[i]mpolite . . . name calling" also fell within the privilege because "Piazza would be hard pressed to tell his version of the story and request help from [his business's] members without the freedom to describe Dziubla as a liar and a con man." (*Id.* at pp. 155–156.) However, the court determined that the publication of Dziubla's personal information "had no connection with, nor legitimate relation to, the Nevada litigation," and was therefore not covered by the litigation privilege. (*Id.* at p. 157.)

---

[7] By not challenging all communications in the 2022 letter and confining their arguments to statements allegedly not in Colton's complaint, Appellants impliedly concede that some of Ghuman and Kahn's statements contained in the 2022 letter were protected. We therefore presume the 2022 letter and verbal reiterations were generally covered by the litigation privilege. Accordingly, we limit our analysis to whether the allegedly extraneous matters exceeded the scope of the litigation privilege. (See, *Tubbs v. Berkowitz* (2020) 47 Cal.App.5th 548, 554 ["Although we conduct a de novo review, we 'must presume the judgment is correct, and the appellant bears the burden of demonstrating error.' "].)

Applying *Dziubla* here, we observe Appellants base their cross-complaint against Ghuman and Kahn on allegations that Ghuman and Kahn verbally relayed the 2022 letter's contents to medical community members. However, the only evidence of what Ghuman and Kahn said are Appellants' own declarations stating that Kahn told a local hospital's chief of staff that Moolani "abandoned patients," that Ghuman "verbalized the statements in the letter" to a local doctor, and that both Ghuman and Kahn "express[ed] verbally, similar messages that would later be expressed in the letter" to Colton employees. Because the two-page letter contains various statements ranging from the history and current status of Colton's oncology practice to Moolani and Iturbe's disputed departure, it is not clear what Ghuman and Kahn verbalized to listeners. Nonetheless, even if we assume that Ghuman and Kahn repeated the portions of the 2022 letter referring to immoral and unethical behavior and patient harm, their statements would not exceed the scope of the litigation privilege.

First, the 2022 letter accuses Moolani and Iturbe of "stealing [its] entire infrastructure, patient list, insurance contracts, and other critical confidential data while employed with Colton," conduct Colton describes as "not only immoral but also unethical." The letter further states "there is no place in this community for such immoral, illegal, and unethical behavior," and the community needs to "to stand against such unethical and immoral behavior."

While the words "unethical" and "immoral" may not appear in the original, or first amended, complaint those adjectives reasonably describe the pleaded allegations. For example, the complaint accuses Appellants of conspiring to "secretly steal" Colton's trade secrets and confidential information, breaching their duties of good faith and loyalty, knowing their

10

conduct was "wrongful", and acting with "deceitful, malicious, and/or oppressive intent." The first amended complaint contains similar allegations, including that Appellants' actions were "intended to harm" Colton and were "carried out with deceitful, malicious, and/or oppressive intent," and that Moolani and Iturbe lied about their plans to keep Colton from "discovering their true plan to steal" Colton's information, employees, and patients. We find this akin to the character attacks in *Dziubla* that we characterized there as impolite but nonetheless privileged. The description of Appellants' alleged conduct as unethical and immoral is not a significant deviation from the allegations of the complaint and first amended complaint, but rather a rhetorical reiteration of Colton's version of the story. (See, e.g., *Izzi v. Rellas* (1980) 104 Cal.App.3d 254, 259, 263–264 [inflammatory letter accusing opposing counsel of extortion was "nothing more than a rhetorical reiteration" of a party's position regarding discovery and settlement and thus within the litigation privilege].) Indeed, there is little surprise when lying, stealing, and intending to harm is described as immoral and unethical.

As for the alleged harm to patients, the 2022 letter states, "The lack of respect for the Hippocratic oath by Dr. Moolani, as the ringleader, and Dr. Iturbe, is very shocking. Patients have been left stranded and unable to receive chemotherapy due to the doctor's lack of a continuity plan and reneging on the transition plan that was agreed upon." Unflattering as they may be, these statements track the first amended complaint's allegations that Moolani knew his actions "would cause a massive disruption in the care of patients referred by the [Independent Physician Associations]," and "as a result of the lapse and/or disruption in care of patients referred by primary care physicians, caused by Moolani's and Iturbe's departure, several primary care physicians have . . . received complaints from patients." The 2022

11

letter's description of patients not being able to receive treatment is simply another way of describing the lapse and disruption of care alleged in the first amended complaint.

We find, therefore, to the extent Ghuman and Kahn verbally repeated portions of the 2022 letter Appellants challenge, those matters are sufficiently connected to Colton's complaint that they do not exceed the scope of the litigation privilege.

## IV. DISPOSITION

The order is affirmed.  Ghuman and Kahn are awarded costs on appeal.


RUBIN, J.

WE CONCUR:


DATO, Acting P. J.


CASTILLO, J.

12