Filed 7/12/13  Gibson v. Fleming CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NEIL B. GIBSON,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NICK V. FLEMING, JR.,<br><br>Defendant and Appellant. | F065577<br><br>(Super. Ct. No. S-1500-CV-276270)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  William D. Palmer, Judge.

Law Offices of David J. Harter, David J. Harter, for Defendant and Appellant.

Swanson O'Dell, Jeremy D. Swanson and Seth N. O'Dell, for Plaintiff and Respondent.

-ooOoo-

Plaintiff Neil B. Gibson sued defendant Nick V. Fleming, Jr., for defamation and related causes of action after Fleming posted statements on the Internet asserting that Gibson was involved in financial services fraud, among other things.  Fleming filed an anti-SLAPP motion (Code Civ. Proc., § 425.16), asking the trial court to strike the complaint because it was directed against statements on an issue of public interest and

because Gibson could not show a probability of succeeding on his claims. The court denied the motion, finding that Fleming did not establish that the allegedly defamatory statements concerned an issue of public interest. We agree.

Fleming attempts to show that the statements concerned an issue of public interest by arguing that Gibson was a public figure. Fleming argued that Gibson was a public figure primarily because Gibson claimed on his own websites that he was an international philanthropist and humanitarian. In our view, these claims do not show that he is a public figure as that term is used in the law.

Fleming also attempts to show that Gibson was a public figure by presenting evidence that people other than Fleming had posted statements on the Internet about him. The other statements, however, do not show that Gibson is a public figure. Finally, in his reply brief, Fleming makes for the first time an argument that this case is similar to two cases in which statements of public interest were found to have been made. One involved a warning to consumers about the allegedly dishonest practices of a vendor, the other a report to a group of parents about a youth counselor's alleged molestation of a child. Since Fleming did not make this argument in the trial court and did not make it on appeal until he filed his reply brief, the argument has been forfeited.

We affirm the trial court's order.

### FACTUAL AND PROCEDURAL HISTORIES

Gibson filed this action on April 6, 2012. In his first amended complaint, Gibson alleged that on several dates in 2011 and 2012, Fleming made, on websites controlled by him, postings that included or implied a variety of false and defamatory statements. These included that Gibson was a perpetrator of fraud involving a type of financial instrument called an international bill of exchange (IBOE); that Gibson was wanted by law enforcement authorities in the United Kingdom; that Gibson was a spy, terrorist, and associate of organized crime figures; that Gibson traded in counterfeit goods; that Gibson, who refers to himself as Lord Gibson, was a phony lord; and that agents of

2.

Gibson threatened Fleming.  The complaint stated that all these statements are false and that Gibson has never engaged in any illegal activity.  The complaint also alleged that Fleming sent an e-mail to Gibson threatening to kill Gibson and harm Gibson's family.  Further, Fleming used Gibson's name without permission in the web addresses of several websites Fleming created.  Fleming also allegedly stated on a website that Gibson was on vacation in Las Vegas at a certain time; then Fleming or someone who read Fleming's post approached Gibson in Las Vegas and tried to take his picture.  Finally, the complaint stated that Gibson is an investment banker and he lost the financial backing of four banks for a business project because the banks had seen Fleming's Internet postings.

The complaint alleges seven causes of action:  libel; slander; intentional infliction of emotional distress; misuse of Gibson's name in violation of his right of publicity; false-light invasion of privacy; invasion of privacy by publication of private facts; and interference with prospective business advantage.  Gibson prayed for an injunction, a declaratory judgment, and damages of $2 million.

Fleming responded to the complaint by filing a special notice to strike pursuant to the anti-SLAPP statute, Code of Civil Procedure section 425.16.[1]  Fleming argued that the motion should be granted because Gibson's claims arose from alleged statements about matters of public interest and because Gibson could not establish a probability that he would prevail.

In his memorandum of points and authorities in support of the motion, Fleming argued that his allegedly defamatory statements concerned a matter of public interest because he made those statements in a public forum (the Internet) and they were statements about a public figure.  Fleming contended that Gibson was a public figure because of Gibson's own websites in which he was described as an international leader in

---

[1]SLAPP stands for strategic lawsuit against public participation.  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)

3.

humanitarian and business activities.  As exhibits to a declaration in support of the motion, Fleming submitted pages printed from 11 websites that promoted Gibson and incorporated Gibson's name into their web addresses.  One site stated:

> "Who is Lord Neil B. Gibson?  [¶]  Oftentimes, successful public figures become skewed by the opinions of others.  The truth is, beyond his great work with international governments, within the financial sector, and in the humanitarian realm, Lord Neil Gibson is, simply put, a good man who is striving to make a positive difference in this world."

The same site describes Gibson as a "well-traveled … global ambassador" and discusses humanitarian projects in which he has been involved.  He once "served as Ambassador at Large" in west Africa.  He was involved with a project with Firestone Tire Company in which shipping containers, after delivering rubber to the United States from a plantation in Liberia, were sent back filled with books, clothing, and other supplies.  In Iraq, Gibson was "integral in efforts to rebuild the infrastructure," including hospitals.  He "sent much funding and financial support" to "the still-struggling New Orleans."  In Lesotho, a small nation surrounded by the Republic of South Africa, he "partnered with both the royal family and major corporate investors to rebuild this tiny nation's economy."  In South Africa itself, Gibson was "working tirelessly to bring boxing and other entertainment events to this country, which will provide much-needed stimulus to the local economy!"  In Belize, "our ambassador to the world is working with the local government to see a major new road built, and also to bring a film studio to the area!"

Other sites made similar claims.  One stated that "there are a handful of people who can make a legitimate claim to having truly changed the world," and that "[o]ne of the most important, but arguably least-known members of this elite group of big-picture world changers is a fellow by the name of Lord Neil Gibson."[2]

---

[2]Another of Gibson's sites asserts that Gibson "earned his title simply through a land purchase, not because he was born into royalty or because he serves in Parliament."

4.

In his opposition to the anti-SLAPP motion, Gibson acknowledged that he maintained self-promotional websites, but contended that these did not make him a public figure. He argued that all the websites were related to his business activities and that his self-promotion did not convert him into a public figure, even though it refers to him using the term "public figure." Some of the websites were Gibson's "attempts to combat [Fleming's] slander and save [Gibson's] livelihood." Gibson went on to argue that there was a probability he would succeed on the merits of his claims, so the motion should be denied even if he were a public figure or the subject of the allegedly defamatory statements was a matter of public interest.

The trial court issued a written ruling:

"Defendant's motion to dismiss the first amended complaint relying on [Code of Civil Procedure] § 425.16, is denied.

"The court concludes that the Defendant fails in [his] attempt to establish that his activity/statements in regard to plaintiff are protected. Defendant claims that plaintiff is a public figure and thus statements in a public forum are protected. Defendant points to plaintiff's statements about himself as establishing the public figure status. At first 'blush' this argument is appealing, however, on further analysis, the reasoning must fail. A self-proclaimed public figure, without more, certainly cannot be sufficient to make the individual an all-purpose public figure. Therefore, at best, Plaintiff is a limited purpose public figure. Thus, speech in regard to plaintiff must encompass a public issue, and the burden of establishing that there exists a public issue rests with Defendant. Defendant has not met his burden on that issue, and thus has not met his burden on the first prong of the two pronged process."

---

Gibson submitted papers purporting to document his purchase, in 2008, of the title of "Lord of the Manor of Warter Priory or Wheldrake" from someone named Viscount Dunkley, through a British solicitor named Harvey Richard Osler. The papers do not refer to any transfer of land and appear to relate only to the sale of the title.

# *DISCUSSION*

As the California Supreme Court has explained, a "SLAPP is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so." (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21.) "In 1992, out of concern over a 'disturbing increase' in these types of lawsuits, the Legislature enacted … the anti-SLAPP statute [i.e., Code Civ. Proc., § 425.16]. The statute authorized the filing of a special motion to strike to expedite the early dismissal of these unmeritorious claims." (*Ibid.*)

"A special motion to strike involves a two-step process. First, the defendant must make a prima facie showing that the plaintiff's 'cause of action … aris[es] from' an act by the defendant 'in furtherance of the [defendant's] right of petition or free speech … in connection with a public issue.'" (*Simpson Strong-Tie Co., Inc. v. Gore, supra,* 49 Cal.4th at p. 21.) If the defendant meets this threshold, the court considers the second step of the inquiry, i.e., whether the plaintiff has established a probability that the plaintiff will prevail on the claim. (*Ibid.*)

Code of Civil Procedure section 425.16, subdivision (e), defines an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution ….'" The portions of the definition relevant to this case are "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e)(3), (4).) We review an order granting or denying an anti-SLAPP motion de novo. (*Smith v. Adventist Health System/West* (2010) 190 Cal.App.4th 40, 52.)

To prevail under either subdivision (e)(3) or subdivision (e)(4) of Code of Civil Procedure section 425.16, Fleming was required to show that his alleged statements were

6.

"in connection with an issue of public interest." One way Fleming could have showed this was by means of evidence that Gibson was a public figure. (*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924 (*Rivero*) [statements concerning "a person or entity in the public eye" can satisfy issue-of-public-interest requirement].)

> "There are two types of public figures: 'The first is the "all purpose" public figure who has "achieve[d] such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." The second category is that of the "limited purpose" or "vortex" public figure, an individual who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues."' [Citation.] Thus, one who undertakes a voluntary act through which he seeks to influence the resolution of the public issues involved is a public figure. [Citation.]" (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 247.)

Another way in which Fleming could have showed that his allegedly defamatory statements concerned an issue of public interest would be by means of evidence that those statements related to "conduct that could directly affect a large number of people beyond the direct participants" or a "topic of widespread, public interest." (*Rivero, supra*, 105 Cal.App.4th at p. 924.)

Fleming argues that Gibson admits he is "an internationally known public figure" because he acknowledges his websites touting his involvement in various projects around the world, describing him as an important humanitarian and financier, and using the term "public figure" in reference to him. Fleming's motion, however, could not properly be granted based on these facts.[3]

---

[3]Fleming also contends that Gibson is a public figure because "a Google search [on his name] yields about 10,100,000 results in 0.45 seconds .…" This argument might be persuasive to someone who has never performed a search on the Internet. Anyone who has done so knows that virtually any search produces a similarly enormous number of results in a fraction of a second.

The facts do not show that Gibson is a public figure for all purposes. A person is a public figure for all purposes if he has achieved *pervasive fame or notoriety*. Gibson's self-promotional websites, claiming that he has been involved in a handful of obscure projects and opining that he is important, do not show that he has achieved pervasive fame or notoriety.

The facts also do not show that Gibson is a public figure for any limited purposes relevant to this case. Gibson's websites do not indicate that he has thrust himself into any public controversy on the subjects of whether he is a fraudfeasor, spy, terrorist, or phony lord. They show only that Gibson wishes to promote himself by claiming he has engaged in various good works.

Fleming argues that, even if Gibson's websites and Gibson's description of himself as a public figure do not conclusively prove that Fleming's allegedly defamatory statements relate to an issue of public interest, they still are *some* evidence of this, and no more is required. Fleming maintains that, "[i]n making out a *prima facie* case under the first prong [of the anti-SLAPP analysis], **any** admissible evidence is sufficient." He cites no applicable authority in support of this proposition, however. He cites *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291, but there the Supreme Court was discussing the standard for the *second* prong of the anti-SLAPP analysis, and in any event it did not say that "any" evidence was sufficient to satisfy that prong. Instead, the plaintiff must show that his or her claim has "'minimal merit.'" (*Ibid.*). Fleming also cites *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838-839, in which the Supreme Court stated the standard for deciding a motion for nonsuit. As with Fleming's other citation, this one is not relevant to the analysis at issue, and in any case does not say that "any" evidence is enough. (To survive a motion for nonsuit, a plaintiff's evidence must be sufficient to support a jury verdict if it is assumed to be true; conflicting evidence is disregarded; and all presumptions, inferences, and doubts are resolved in favor of the plaintiff (*ibid.*).)

8.

While we do not believe the first prong of the anti-SLAPP analysis is satisfied by merely "any" evidence that the plaintiff is a public figure, we are not aware of authority stating exactly what the evidentiary standard applicable to this showing is. It is unnecessary for us to determine what the standard is, however, because we are confident that Fleming's showing fails under any standard. Gibson's websites do not support the view that Gibson is a public figure. The puffery on those websites provides no support for the notion that Gibson has achieved pervasive fame or notoriety. It also provides no support for the contention that Gibson is a public figure for the limited purposes relevant to this lawsuit, since they do not indicate that Gibson has thrust himself into any public controversy.

Fleming next argues that his allegedly defamatory statements related to an issue of public interest because there were other websites, to which Fleming's site provided links, or from which it republished content, that discussed Gibson. He says, "As [Gibson] admits, [Fleming] has allegedly linked *other people's articles* about 'Lord' Gibson to [Fleming's] websites.… Clearly, *other people* are writing about Lord Gibson and started doing so before [Fleming] took any interest." Fleming also says Gibson's websites must exist in part to combat negative publicity, indicating that public debate about him is ongoing.

Fleming fails to support these contentions. Fleming cites Gibson's declaration, which in turn refers to a third-party article republished on one of Fleming's sites. A reference to Gibson appears in approximately the 25th paragraph of this long article, which originally appeared on a website called "Unwanted Publicity Intelligence." The paragraph states that Gibson was "believed to be" an "international bank paper trading fraudster," but in reality was a government agent "feigning to be a 'trader' brokering what actually turned out to be a sting operation .…" This reference does not show that Gibson has achieved pervasive fame or notoriety, or that any public controversy exists

9.

into which Gibson has inserted himself. Fleming does not identify anything else in the record as having been written about Gibson by "other people."

In the reply brief he submitted to this court, Fleming makes an additional argument for the first time. He says his allegedly defamatory statements are comparable to the warnings of a consumer advocate to the public about an allegedly unethical vendor, or warnings about a possible criminal to a class of potential victims. He cites *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883 (*Wilbanks*) and *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534 (*Terry*).

In *Wilbanks*, the defendant was an author of several books about viatical settlements who also maintained a website on the subject.[4] The plaintiffs were viatical settlements brokers. (*Wilbanks, supra,* 121 Cal.App.4th at p. 889.) The defendant's website advised readers to be careful when dealing with the plaintiffs, as the plaintiffs were incompetent and unethical and were under investigation by the state department of insurance. (*Id.* at p. 890.) The plaintiffs sued for defamation and the defendant filed an anti-SLAPP motion. (*Ibid.*) The Court of Appeal held that the defendant's allegedly defamatory statements were made in connection with an issue of public interest. Even though the plaintiffs "are not in the public eye, their business practices do not affect a large number of people and their business practices are not, in and of themselves, a topic of widespread public interest," still, "[c]onsumer information … at least when it affects a large number of persons … generally is viewed as information concerning a matter of public interest." (*Id.* at p. 898.) The viatical settlement industry involved large numbers of people both as buyers and sellers and the defendant was a provider of information about it to consumers. Her warning not to use the plaintiffs' services was provided in a

---

[4]A viatical settlement is a transaction in which a terminally ill insured sells his or her life insurance policy to a third party. The insured receives cash to pay for medical and living expenses. The third party receives the benefits of the policy when the insured dies. (*Wilbanks, supra*, 121 Cal.App.4th at p. 889.)

10.

context of information provided to consumers to aid them in choosing among brokers. This meant her allegedly defamatory statements concerned a matter of public interest. (*Id.* at pp. 899-900.)

In *Davis*, the defendants were a church and its leaders, and the plaintiffs were employees of the church who worked in its youth program. The defendants investigated allegations of an inappropriate, possibly sexual, relationship between the plaintiffs and a teenage participant in the youth program. The church released the report of its investigation to about 100 parents of the other teenagers in the program. The report detailed a series of inappropriate e-mail messages between the girl and the plaintiffs, among other things. (*Terry, supra*, 131 Cal.App.4th at pp. 1539-1540, 1543.) The plaintiffs sued the defendants for defamation and the defendants filed an anti-SLAPP motion. (*Id.* at pp. 1538, 1539-1540.) The Court of Appeal held that the allegedly defamatory statements in the report concerned an issue of public interest "because they involved the societal interest in protecting a substantial number of children from predators" and the matter was referred to the police for a criminal investigation. (*Id.* at p. 1547.) The court also found it significant that the "plaintiffs' actions gave rise to an ongoing discussion" within the church and among the parents "about protection of children." (*Id.* at p. 1550.)

Fleming's argument based on these cases comes too late. In his briefs and oral argument in the trial court, and in his opening brief in this court, he never argued that he was a consumer advocate, or was similar to a reporter to parents of suspicious activities that placed their children at risk of molestation. In fact, even though Gibson argued in his opposition brief in the trial court that the creation of fraudulent international bills of exchange would not, by itself, be a matter of public interest, Fleming did not take the opportunity to contend that it would be, and that he therefore should prevail on the point regardless of whether or not Gibson was a public figure. Instead, Fleming stuck to his argument that Gibson was either a public figure for all purposes or a public figure for a

11.

limited purpose. The view that Fleming's postings were about an issue of public interest because they warned the investing public about a fraudulent financial product— regardless of Gibson's status as a public figure—appears in Fleming's submissions for the first time on appeal, and then only in his reply brief.

The argument therefore is forfeited. "Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant." (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.) "It is fundamental that a reviewing court will not consider issues not raised in the trial court." (*Lemelle v. Superior Court* (1978) 77 Cal.App.3d 148, 159.) "An argument or theory will generally not be considered if it is raised for the first time on appeal." (*American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1281.) Although we have discretion in exceptional cases to consider a forfeited issue (*In re Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7), we see no reason to do so in this case.

### *Request for judicial notice and evidentiary objections*

Fleming filed an amended request for judicial notice on February 21, 2013. He asks us to take notice of a copy of a complaint filed against him by Gibson in Ventura County Superior Court on March 28, 2012, and a printout of docket information from that case. The complaint alleges facts and causes of action that appear to be essentially the same as those alleged in this case. The case in Ventura County appears to have progressed far, with an anti-SLAPP motion having been filed and denied and a jury trial calendared. On December 28, 2012, Gibson filed objections to evidence Fleming submitted to the trial court in support of his anti-SLAPP motion, and to the materials of which Fleming requests judicial notice.

The filing of a possibly duplicative action in another county has no bearing on our analysis or disposition of this appeal. Fleming's only argument about the other case is that its existence supports his argument that this case is frivolous and therefore Gibson cannot make the showing of likely success required to satisfy the second prong of the

anti-SLAPP analysis. Since we hold that the trial court correctly found Fleming had failed to satisfy the first prong, we do not address the question of the second prong. The question of what, if anything, should be done about the existence of the other action is a matter for the trial court. Fleming's request for judicial notice therefore is denied as moot.

We would affirm the judgment with or without the evidence to which Gibson objects. His evidentiary objections therefore are overruled on the ground that they are moot.

## *DISPOSITION*

The trial court's order denying Fleming's anti-SLAPP motion is affirmed. Costs on appeal are awarded to Gibson.

Fleming's amended request for judicial notice, filed on February 21, 2013, is denied. Gibson's evidentiary objections, filed on December 28, 2012, are overruled.

_____
Wiseman, Acting P.J.

WE CONCUR:


_____
Levy, J.


_____
Peña, J.

13.