Filed 8/19/14  Korman v. Schott CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BOB KORMAN et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>NICOLE SCHOTT,<br><br>      Defendant and Respondent. | A136581<br><br>(San Francisco City and County<br> Super. Ct. No. CGC-12-519187) |

Plaintiffs Bob Korman and Nancy Ryti commenced this action to recover compensatory and punitive damages against named defendant Nancy Schott and Does 1-40, based on allegedly defamatory and libelous statements posted on "Yelp, a Web site that collects consumer reviews of businesses."  (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 423 (*Bently Reserve*).)  Before filing an answer, Schott specially moved to strike the complaint under Code of Civil Procedure section 425.16,[1] the anti-SLAPP (strategic lawsuit against public participation) statute.  The trial court granted the motion, finding that Schott had met her burden of demonstrating all the causes of action were based on protected activity within the scope of the anti-SLAPP statute and plaintiffs had failed to meet their burden of showing a probability of prevailing on their complaint

---

[1]      All undesignated statutory references are to the Code of Civil Procedure.

1

against her.  Because we find no merit to plaintiffs' challenges to the trial court's ruling, we affirm the judgment entered in favor of Schott.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Bob Korman and Nancy Ryti, husband and wife, filed a judicial council form complaint alleging two causes of action – intentional tort and general negligence – based on Yelp reviews concerning Korman who is the property manager of an apartment rental building owned by Ryti.  According to the complaint, named defendant Nicole Schott and Does 1-40 "posted" reviews describing Korman as "greedy, unethical, or incompetent.  The postings [further] described Korman as nuts, out of his mind, insane, and a nightmare.  These were stated as facts and not opinions."  Korman alleged he demanded that the postings be retracted, and they were, but shortly thereafter similar postings appeared on Yelp made "at the direction of, on behalf of, and/or by" defendants, and by "persons (identities) who had never rented from Korman and/or Ryti."  It was alleged the postings were false, constituted "defamation and libel per se," "were negligent, reckless, and/or grossly negligent," "caused intentional, severe infliction of emotional distress" to Korman, and "damaged" Korman's "reputation" and the "business of residential leasings by Korman and Ryti."  It was also alleged defendants were "guilty of" malice and oppression as defined in Civil Code section 3294, and plaintiffs requested, "in addition to actual damages, damages to make an example of and punish defendant," and "to deter future, similar conduct."

Before filing an answer, named defendant Schott (hereafter referred to as defendant) filed a special motion to strike pursuant to section 425.16.  Conceding she posted for a one week period a Yelp review regarding the management of the apartment building in which she was living in January 2012, she argued the review was protected free speech activity under subdivisions (e)(3) and (4) of section 425.16.  It was further argued that plaintiffs would not be able to prevail on their claims.  Defendant attached a

---

[2]  In the absence of any showing of prejudice, we deem plaintiffs' notice of appeal filed on September 13, 2012 to be a premature notice of appeal from the judgment entered on September 28, 2012.  (Cal. Rules of Court, rules 8.100 (a)(2), 8.104(d).)

2

printout of her review as it had actually appeared on the Yelp Web site, together with another negative review about the management of the apartment building, written by another person in 2009.

In opposition, plaintiffs submitted their counsel's memorandum, arguing that although the Yelp Web site was "a public forum, open to the public," defendant's Yelp review was not made in connection with a public issue or an issue of public interest because the review was limited to the few rental units placed into the market by Ryti through Korman. Ryti did not submit a declaration. In his declaration Korman averred he had never been diagnosed as insane, or with any kind of mental illness that might be related to insanity, and he had not engaged in "greedy, unethical, or incompetent practices as a building manager." Korman also asserted that defendant was informed that Ryti was the building owner. Addressing the "impact the negative posting(s) may have on [their] relatively small residential leasing business," plaintiffs relied on an April 2012 form realty letter, addressed to Ryti, which stated, in pertinent part: "You may not be familiar with online rating sites such as Yelp and Google, but I recently realized that you have some negative comments on these pages with regards to the management of your property. [¶] Perhaps you had one bad experience with a tenant, or perhaps it was just bad luck, but nevertheless, this could possibly affect the marketability of your property in the future as more tenants research their landlords and management companies before signing a lease. A negative image could potentially hurt your chances of getting a great tenant."

Defendant submitted a reply memorandum in which she argued plaintiffs had presented "very little in terms of a factual showing of their likelihood of prevailing" on their claims, asserting Korman's declaration was irrelevant and the April 2012 form realty company letter was inadmissible hearsay. Defendant also submitted her own declaration describing the circumstances giving rise to her posting a review on Yelp. She asserted that on January 9, 2012, she received a letter from Korman, and "[i]ts tone, format, and use of the third person ('we left 2 very clean dishes inside for you to examine') seemed, to speak colloquially, nuts." After receiving the January 9 letter,

3

defendant posted her Yelp review "out of a desire to share my experience with other potential renters. I am not aware that anyone besides Bob ever saw the review." On January 17, 2012, defendant received another letter from Korman, which "reinforced the 'nuts' sense" of the first letter. Because Korman threatened legal action, defendant was scared and immediately removed her review from the Yelp Web site. She further asserted she did not write the review out of a sense of animosity toward Korman but to share her own honest experience with potential renters; her use of the words " 'nuts' and 'insane' " were honest characterizations of her interactions with him of which the attached letters were typical; and she did not "perceive [herself] to be saying anything 'factual' regarding his mental health, as that is not how [she understood] those terms to be used."

Plaintiffs submitted a final memorandum and a supplemental declaration from Korman concerning the issue of damages. In his supplemental declaration, Korman averred that since defendant's Yelp posting "the following things have taken place: telephonic discussions with tenant-prospects who revealed they read disturbing YELP review and refused to rent; prospects have failed to appear for firm-appointments; several people have called and left voice-mail messages to state they would not rent from a 'well-known slumlord;' a few tenants living in the California building have [sic] me they had read the subject YELP review, found it difficult to believe, but 'refused to get involved.' It was after [defendant] posted diatribe that others were seemingly encouraged to post or re-post."

In a order filed on June 25, 2012, the trial court granted defendant's special motion to strike the complaint. In so ruling, the court stated: "Defendant satisfied the first prong of the anti-SLAPP statute by showing that her review is protected speech because it was made in a public forum and addresses issues of public concern. Plaintiffs failed to show the required minimum merit to either of their claims." After awarding defendant attorney fees in the sum of $15,330, the trial court entered a judgment in favor of defendant.

**DISCUSSION**

Our review of the grant of defendant's special motion to strike under section 425.16 is de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 (*Flatley*).) Section 425.16, subdivision (b) (1), states, in pertinent part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of . . . free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Thus, " 'a special motion to strike involves a two-part inquiry. First, the defendant must make a prima facie showing that a cause of action arises from an act in furtherance of his or her constitutional rights of . . . free speech in connection with a public issue. [Citations.] If such a showing has been made, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim. [Citation.] If the plaintiff fails to carry that burden, the cause of action is 'subject to be stricken under the statute.' " (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 280-281.)

### A.      *Causes of Action Arising From Protected Activity*

In assessing whether defendant met her burden under the first prong of the section 425.16 analysis, "the critical consideration is whether the cause of action is *based on* the defendant's protected speech . . . activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*).) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability — and whether that activity constitutes protected speech . . . ." (*Navellier, supra*, at p. 92.)

In support of her anti-SLAPP motion, defendant relies on the third and fourth categories of statements or conduct protected by the anti-SLAPP statute: "(e)(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subds. (e)(3),

(4).) Theses categories of statements or conduct "protect only statements or conduct connected to an issue of public interest. Beyond that requirement, however, these categories are quite broad, applying by their terms to any statements made in a place open to the public or in a public forum, or any conduct engaged in, in furtherance of the rights of . . . free speech." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 893.) But, "protection under section 425.16 for statements in connection with a public issue or an issue of public interest is not dependent on those statements having been made in a public forum. Rather, subdivision (e)(4) of section 425.16 applies to private communications concerning issues of public interest." (*Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 736.)

As conceded by plaintiffs in the trial court, and contrary to their appellate argument, "Web sites accessible to the public, [like the Yelp Web site] are 'public forums' for purposes of the anti-SLAPP statute." (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4.) We further conclude defendant's Yelp review was a matter of public interest within the meaning of section 425.16, subdivisions (e)(3) and (4). "Section 425.16 does not [expressly] define 'public interest,' but its preamble states that its provisions 'shall be construed broadly' to safeguard 'the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' (§ 425.16, subd. (a).)" (*Nygård, Inc. v. Uusi–Kerttula* (2008) 159 Cal.App.4th 1027, 1039 (*Nygård*).) In *Nygård,* the court held that " 'an issue of public interest' . . . is *any issue in which the public is interested*. In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." (*Id*. at p. 1042.) Here, the public's interest in learning about the management of rental property in San Francisco is demonstrated by the numerous reviews on the Yelp Web site concerning residential rentals including the property at which defendant rented an apartment.[3]

---

[3] Relying on *Dyer v. Childress* (2007) 147 Cal.App.4th 1273 (*Dyer*), plaintiffs argue that defendant provided no reasonable evidence that plaintiffs' persona was of any discernible public interest. However, the statutory language in section 425.16 "compels

6

We see no merit to plaintiffs' arguments that this case is not a SLAPP action because defendant's Yelp review may have been posted in anger and defendant potentially conceded the review's malicious purpose by voluntarily removing the review and remaining in the apartment. Our Supreme Court has declined to hold " 'that section 425.16 does not apply to events that transpire between private individuals' " and has "explicitly rejected the assertion ' "that the only activities qualifying for statutory protection are those which meet the lofty standard of pertaining to the heart of self-government." ' " (*Navellier, supra*, 29 Cal.4th at p. 91, quoting *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1116.) "Nothing in the statute itself categorically excludes any particular type of action from its operation, and no court has the ' "power to rewrite the statute so as to make it conform to a presumed intention which is not expressed." ' [Citation.] For us to adopt such a narrowing construction, moreover, would contravene the Legislature's express command that section 425.16 'shall be construed broadly.' (§ 425.16, subd. (a).)" (*Navellier, supra*, 29 Cal.4th at p. 92, fn. omitted.)

As part of the first-prong analysis under section 425.16, we also reject plaintiffs' assertion that defendant's special motion to strike is barred by "the commercial speech exemption" in subdivision (c) of section 425.17 (§ 425.17(c)). Our Supreme Court has held that a plaintiff has the burden of establishing the applicability of a statutory exemption from the anti-SLAPP statute. (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 25-26 (*Simpson Strong-Tie Co.*).) Section 425.17(c) reads, in pertinent part: "Section 425.16 does not apply to any action brought against a person primarily engaged in the business of selling or leasing goods or services, . . . arising from any statement or conduct by that person if both of the following conditions exist: [¶] (1) The statement or conduct consists of representations of fact about that person's or a business competitor's

us to focus on the conduct of the defendant[] and to inquire whether that conduct furthered such defendant['s] exercise of [her] free speech rights concerning a matter of public interest. We find no requirement in the anti-SLAPP statute that the plaintiff[s'] persona be a matter of public interest." (*Tamkin v. CBS Broadcasting, Inc.* (2011) 193 Cal.App.4th 133, 143 (*Tamkin*) [declining to follow *Dyer*].)

business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services. (2) The intended audience is an actual or potential buyer or customer or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . ." (§ 425.17, subd. (c).) Plaintiffs can meet their burden of establishing the "commercial speech exemption" only by proffering evidence demonstrating that both clauses (1) and (2) of subdivision (c) of section 425.17 apply. (*Contemporary Services Corp. v. Staff Pro Inc*. (2007) 152 Cal.App.4th 1043, 1053.) However, they have neither alleged nor submitted evidence regarding clause (1) of subdivision (c) of section 425.17. Although plaintiffs contend defendant sells medical devices, the complaint's causes of action do not concern statements made by defendant about her sale of medical devices or her competitor's sale of medical devices. Instead, the complaint's causes of action are premised on defendant's statements made about plaintiffs – specifically plaintiffs' business, and there is simply no allegation or proof that plaintiffs and defendants are business competitors. Consequently, plaintiffs' argument that the anti-SLAPP statute does not apply based on the section 425.17(c) exemption fails. (*Simpson Strong-Tie Co., supra,* 49 Cal.4th at p. 30; see *Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 675-677.)[4]

### B.  *Probability of Prevailing on Merits*

"Having determined that defendant[ ] met [her] burden of showing that [the complaint] arose from protected activity, we next determine whether plaintiffs have met their burden of demonstrating a probability of prevailing on their causes of action. [Citation.] In doing so, we consider the pleadings and the supporting and opposing

---

[4]  We are not persuaded by plaintiffs' citation to *Brill Media Co. LLC v. TCW Group, Inc.* (2005) 132 Cal.App.4th 324, 342 (disapproved on another ground in *Simpson Strong-Tie Co., supra*, 49 Cal.4th at p. 25, footnote 3), and *Coastal Abstract Service v. First American Title* (9th Cir. 1999) 173 F.3d 725, 730-736. Those cases are factually distinguishable and do not support application of the section 425.17(c) exemption in this case.

affidavits filed by the parties on the anti-SLAPP motion. We do not weigh credibility or determine the weight of the evidence. Rather, we accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." (*Tamkin, supra*, 193 Cal.App.4th at p. 145; *Flatley, supra,* 39 Cal.4th at p. 325.) Nevertheless, "[i]n opposing an anti-SLAPP motion, the plaintiff[s] cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial. [Citation.] Thus, declarations may not be based upon 'information and belief' [citation] and documents submitted without the proper foundation are not to be considered." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212; *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1238.)

Plaintiffs' causes of action for intentional tort and general negligence are all based on defendant's Yelp review, which includes allegedly "defamatory and libelous statements." Civil Code section 45 defines libel as "a false and unprivileged publication by writing . . . ." As we now discuss, a review of the record supports our conclusion that plaintiffs failed to submit admissible evidence that would competently establish the publication element necessary to support a claim of defamation and libel.

"Publication, as used in connection with liability for defamation, is the intentional or negligent communication of defamatory matter to a third person, or persons." (53 C.J.S. (2005) Libel and Slander; Injurious Falsehood § 87, p. 139, fn. omitted; see *Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101, 112 (*Cabesuela*).) Plaintiffs assert they can meet the publication element by a showing that defendant "in writing accused" them of the mismanagement of a rental apartment building and that defendant's Yelp review was read by plaintiffs and defendant. We disagree. "Inasmuch as the publication requirement for a defamation claim is based on the assumption that a statement, neither seen nor heard by a third party, cannot cause harm to a party's reputation" (53 C.J.S. (2005) Libel and Slander; Injurious Falsehood § 87, p. 140, fn. omitted), the publication element cannot be met by a showing that defendant prepared, composed or wrote a libel about plaintiffs and the libel was read by

9

plaintiffs and defendant. (*Ibid*.; see *Cabesuela, supra*, at p. 112; *Van-Go Transport v. New York City Bd. of Educ.* (E.D.N.Y. 1997) 971 F. Supp. 90, 102.) Nor can plaintiffs meet the publication element by relying on defendant's republication of her Yelp review and other Yelp reviews as recited in her motion papers and appellate briefs. Those republications are absolutely privileged as statements made in a judicial proceeding. (Civ. Code, § 47, subd. (b) (2); see S*ilberg v. Anderson* (1990) 50 Cal.3d 205, 212.) In an effort to meet their burden, plaintiffs also ask us to consider (1) the April 2012 form realty letter "as evidence that a third party read the Review and understood [defendant's] review's defamatory meaning," and (2) Korman's assertions that prospective tenants and tenants living in the building had allegedly said they had read either a "disturbing YELP review" or "the subject YELP review." However, both the April 2012 form realty letter and the statements by prospective tenants and tenants living in the building are inadmissible hearsay and therefore not competent evidence of publication.[5] Consequently, in the absence of any admissible and competent evidence showing that a third party read defendant's Yelp review, plaintiffs failed to demonstrate a probability of prevailing on their causes of action for intentional tort and general negligence based on defamation and libel.

We are not persuaded by plaintiffs' arguments that they made the requisite minimal showing as to the probability of prevailing on other claims. Like defamation, a claim for trade libel requires proof of publication. (See *Mann v. Quality Old Time Service, Inc*. (2004) 120 Cal.App.4th 90,104.) Additionally, "to prevail on [a] trade libel claim," plaintiffs cannot rely on "a general decline in business arising from the falsehood," but "must present evidence showing [they] suffered some pecuniary loss" by "identify[ing] particular customers and transactions of which [they were] deprived as a result of the libel." (*Id.* at pp. 109-110.) Apart from the hearsay in Korman's supplemental declaration, plaintiffs failed to proffer any admissible evidence

---

[5]      *Bently Reserve, supra,* 218 Cal.App.4th 418, does not assist plaintiffs because in that case the defendant did not challenge and the court did not address the element of publication. (*Id*. at p. 424.)

10

demonstrating that any prospective tenant refused to rent from plaintiffs because of defendant's Yelp review or other evidence of pecuniary loss. Additionally, neither in the trial court nor on appeal have plaintiffs proffered admissible evidence that would be competent to support granting them relief for intentional infliction of emotional distress, invasion of privacy, financial elder abuse, and breach of the lease.

### C.    *Plaintiffs' Constitutional Arguments*

As have other courts addressing similar arguments, we reject plaintiffs' arguments that their constitutional rights of due process, equal protection and separation of powers, are violated because a section 425.16 ruling in favor of defendant denies plaintiffs their right to a jury trial. (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 865-867 [court rejected claim that a special motion to strike violates a plaintiff's constitutional rights to equal protection and a jury trial]; *Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 746 [court rejected claim that a special motion to strike unconstitutionally deprived plaintiff of the right to a jury trial].)[6]

### DISPOSITION

The orders granting defendant's special motion to strike and attorney fees and the judgment in favor of defendant are affirmed. Defendant is awarded costs on appeal.

_____
Jenkins, J.

I concur:

_____
McGuiness, P. J.

---

[6]    In light our determination, we need not address plaintiffs' other contentions or requests.

11

POLLAK, J., Concurring.

I agree with the majority opinion but add that even if plaintiffs had presented competent evidence of publication, in my opinion they would nonetheless have failed to establish their ability to prevail in the action for another reason. The challenged Yelp posting states no more than non-actionable opinion and hyperbole. The assertion that "the landlord is nuts" and " 'fixes' things in the most pathetic and cheapest manner possible" cannot reasonably be taken literally. To the extent that the posting implies any facts, such as the presence of mice in the apartment, plaintiffs presented no evidence that these statements are false. For this reason alone, plaintiffs failed to satisfy the second prong of the anti-SLAPP analysis. (E.g., *Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 695–700.)


_____

Pollak, J.