Filed 5/21/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| LAWRENCE POTT et al., | H044587 |
| | (Santa Clara County |
| Plaintiffs and Respondents, | Super. Ct. No. 16CV300206) |
| v. | |
| | ORDER MODIFYING OPINION |
| MICHAEL LAZARIN, | AND DENYING REHEARING |
| Defendant and Appellant. | [NO CHANGE IN JUDGMENT] |


THE COURT:

It is ordered that the opinion filed herein on March 30, 2020, be modified as follows:

1.  On page 10, first full paragraph, lines 7 and 8 and the last line, change "speech" to "use";

2.  On page 10, last incomplete paragraph, line 1, change "speech" to "use";

3.  On page 11, first full paragraph, line 13, delete "in exchange for money";

4.  On page 11, last full paragraph, lines 3 and 4, replace "relate to a transaction involving products" with "relate to products";

5.  On page 11, last full paragraph, on both lines 5 and 7, change "speech" to "use";

6.  On page 12, first full paragraph, line 3, replace "cannot be deemed commercial speech" with "was speech protected by the First Amendment."; and

7.	On page 12, first full paragraph, line 4, replace "speech" with "use."

This modification does not affect the judgment.

The petition for rehearing is denied.

_____

Mihara, J.

_____

Premo, Acting P. J.

_____

Elia, J.

Pott v. Lazarin
H044587

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court |
| Trial Judge: | Honorable Mary Arand |
| Attorneys for Plaintiffs and Respondents: | Robert Edward Freitas<br>Kayla A. Odom<br>Freitas & Weinberg LLP |
| Attorney for Defendant and Appellant: | Carleton L. Briggs<br>Law Offices of Carleton L. Briggs |

Pott v. Lazarin
H044587

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| LAWRENCE POTT et al., | H044587 |
| Plaintiffs and Respondents, | (Santa Clara County Super. Ct. No. 16CV300206) |
| v. | |
| MICHAEL LAZARIN, | |
| Defendant and Appellant. | |

Appellant Michael Lazarin appeals from the superior court's order denying his Code of Civil Procedure section 425.16 motion to strike a Civil Code section 3344.1 cause of action brought by respondents Lawrence and Sheila Pott (the Potts). Civil Code section 3344.1 prohibits certain unauthorized uses of the name or likeness of a "deceased personality." The Potts alleged that Lazarin had used their deceased daughter Audrie's name and likeness in Facebook posts and at a press conference. Lazarin contends that the Potts' cause of action targeted his protected speech and that they could not show a probability of prevailing because his speech did not come within the ambit of that statute. We agree and reverse the superior court's order.

## I. Civil Code section 3344.1

"Any person who uses a deceased personality's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise,

goods, or services, without prior consent from the person or persons specified in subdivision (c) [(the successors-in-interest to the deceased personality's rights)], shall be liable for any damages sustained by the person or persons injured as a result thereof. . . . [¶] . . . [¶]  (h) As used in this section, 'deceased personality' means any natural person whose name, voice, signature, photograph, or likeness has commercial value at the time of his or her death, or because of his or her death, whether or not during the lifetime of that natural person the person used his or her name, voice, signature, photograph, or likeness on or in products, merchandise, or goods, or for purposes of advertising or selling, or solicitation of purchase of, products, merchandise, goods, or services. . . .  [¶] (j) For purposes of this section, the use of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign, shall not constitute a use for which consent is required under subdivision (a). . . .  [¶] . . . [¶]  (n) This section shall apply to the adjudication of liability and the imposition of any damages or other remedies in cases in which the liability, damages, and other remedies arise from acts occurring directly in this state.  For purposes of this section, acts giving rise to liability shall be limited to the use, on or in products, merchandise, goods, or services, or the advertising or selling, or soliciting purchases of, products, merchandise, goods, or services prohibited by this section." (Civ. Code, § 3344.1.)

## II.  Background

Audrie Taylor Pott was the Potts' daughter.[1]  In 2012, she was sexually assaulted while unconscious from intoxication, and her assailants distributed intimate photographs of her after the assault.  Audrie committed suicide soon after the assault.

---

[1]     Lazarin claims to be the biological father of Audrie, but Sheila was married to Lawrence at the time of Audrie's birth.

The Potts are the registered successors-in-interest to "deceased personality" rights in the name, photograph, and likeness of Audrie under Civil Code section 3344.1. They authorized the use of Audrie's name and likeness in a documentary film entitled Audrie & Daisy, telling the story of Audrie and another teenage girl who had been sexually victimized. The film was released in September 2016.

In September 2016, the Potts brought an action against Lazarin seeking both damages and injunctive relief based on his alleged violation of Civil Code section 3344.1.[2] They alleged that Lazarin had used Audrie's "name, photograph, and likeness . . . for the purpose of advertising services provided by him and others" without their consent. The Potts sought compensatory damages, disgorgement of profits, punitive damages, and injunctive relief. On September 23, 2016, the Potts obtained a temporary restraining order based on evidence that Lazarin had used Audrie's name and photograph in posts on Facebook and at a "'press conference' at San Jose City Hall."

The Potts applied for a preliminary injunction. Lazarin admitted that he had displayed Audrie's photograph at a "press conference" that he held "to publicize my efforts to change the law regarding parental rights." However, he argued that the Potts had failed to show that Audrie's name or likeness had any "commercial value." Lazarin also argued that the Potts were required to, but could not, show that he had used Audrie's name or likeness to promote "goods or services offered by him or others." In addition, Lazarin argued that his use of Audrie's name and likeness fell within the exemption set forth in Civil Code section 3344.1, subdivision (j) and was protected by the First

---

[2] The Potts also alleged a common law cause of action for "unlawful use of identity," which they stated below "was pleaded for the purpose of seeking a change in the law on appeal." They conceded that the common law cause of action lacked merit "based on the current state of the law." The superior court did not separately address the common law cause of action because Lazarin's motion sought to strike "the complaint as a whole." The parties focus on the Civil Code section 3344.1 cause of action, so we do likewise.

3

Amendment. Lazarin submitted a declaration in which he stated that he had "not engaged in any professional fundraising" or "received any payment for any of my volunteer work" for the causes he promoted.

In October 2016, Lazarin filed a special motion to strike the Potts' complaint under Code of Civil Procedure section 425.16. He asserted that the Potts' claims arose from his protected speech and that the Potts could not show a probability of prevailing. His claim that his actions were protected speech was based on his assertions that "Audrie's death was a matter of public interest," and that his "fight for parental rights" was "an issue of public interest."

The Potts opposed Lazarin's motion. Lawrence submitted a declaration stating that he and Sheila had authorized the use of Audrie's name and likeness in the Netflix movie Audrie & Daisy, which he described as "a commercial endeavor." The Potts also submitted evidence that Lazarin had solicited donations for "Project semicolon; For Audrie," a suicide prevention group, using Audrie's name and photograph.

The Potts' application for a preliminary injunction was heard in October 2016. At the hearing, Lawrence testified that he and Sheila had been "approached by various movie makers, Hollywood film crews proprietors [sic], publishers, and the like" seeking "commercial exploitation" of Audrie's name or story. He also testified that they did not "talk about money" with any of these people, although money was offered. The court denied the Potts' application for a preliminary injunction because it found that the Potts had not demonstrated a probability of prevailing.

Lazarin's motion to strike was heard in November 2016 before a different judge than the one who had heard the preliminary injunction application. The court found that Lazarin had failed to make a threshold showing that the Civil Code section 3344.1 cause of action arose from protected activity. The court, relying on *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*), found that "the assertedly protected speech or petition activity was

4

in violation of section 3344.1."[3]  The court also concluded that the Potts had shown a probability of prevailing by submitting evidence that Lazarin had used Audrie's name and likeness without their consent to solicit money, that Audrie was a "deceased personality," and that the statutory exemption did not apply.  Lazarin timely filed a notice of appeal.

### III.  Discussion

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).)  "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: . . . (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e).)

" 'Section 425.16 posits . . . a two-step process for determining whether an action is a SLAPP.[4]  First, the court decides whether the defendant has made a threshold

---

[3]    In *Flatley*, the California Supreme Court held that Code of Civil Procedure section 425.16 does not protect conduct that is "illegal as a matter of law." (*Flatley*, *supra*, 39 Cal.4th at p. 328.)  The Potts do not attempt to defend the superior court's reliance on *Flatley* in finding that Lazarin had not met his step-one burden.

[4]    "SLAPP is an acronym for 'strategic lawsuit against public participation.' " (*Simpson Strong-Tie Company, Inc. v. Gore* (2010) 49 Cal.4th 12, 16, fn.1.)

showing that the challenged cause of action is one arising from protected activity. . . . If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278-279 (*Soukup*).) "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Code Civ. Proc., § 425.16, subd. (b)(2).) "We review de novo the grant or denial of an anti-SLAPP motion." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

### A. Step One: Lazarin Satisfied His Initial Burden

Lazarin bore the burden of demonstrating that the acts targeted by the Potts' Civil Code section 3344.1 cause of action arose from "protected activity."

#### 1. Background

The Potts' complaint alleged, without elaboration, that Lazarin had "used the name, photograph, and likeness of Audrie Taylor Pott . . . for the purpose of advertising services provided by him and others . . . in violation of Civil Code § 3344.1." During the TRO proceedings, Lawrence more specifically identified those acts as Lazarin's posts on Facebook using Audrie's name and photograph and Lazarin's " 'press conference' at San Jose City Hall" at which he displayed photographs of Audrie.

Lawrence provided further detail about Lazarin's Facebook posts. He asserted that Lazarin had posted to Facebook a link to a "YouCaring.com fundraising webpage" "advertising for a fundraising campaign." The post and the Web page used Audrie's name and photograph, which the Potts claimed was a "solicitation of funds to support Mr. Lazarin" because the YouCaring.com Web page stated that it sought money for

6

"'Michael Lazarin's Fight for Children to Know Their Parents.'" Lazarin had also shared on Facebook a post containing a link to an article about his "Fight," shared on Facebook a post that used Audrie's name and photograph and contained a link to a video of his press conference that had been posted on YouTube, posted on Facebook his own link to the press conference video, and shared another post that used Audrie's name in connection with a post about his press conference. When the Potts subsequently sought a preliminary injunction, they relied solely on the press conference and the YouCaring.com Web page.

Lazarin's motion to strike was accompanied by his declaration that he had never "engaged in any professional fund-raising . . . [or] received any payment" for his work in support of suicide prevention and legal changes to parental rights laws. He denied any role in setting up the YouCaring.com Web page or in posting the video of his press conference on YouTube, but he admitted displaying the photographs at his press conference.

The Potts responded with a declaration by Lawrence expressing his belief that Lazarin's press conference and his sharing of another person's Facebook post used Audrie's name and photographs "to draw attention to himself and his personal attacks on me and my family."

### 2. Analysis

To satisfy his step-one burden, Lazarin was required only to make a prima facie showing that the Potts' cause of action was based on his "written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or . . . any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e).)

Lazarin clearly met this burden. The Potts do not claim that the circumstances surrounding Audrie's death were not "an issue of public interest." Indeed, it was

7

undisputed that the circumstances that led to Audrie's suicide were the subject of considerable public interest, leading to intense media coverage and a major motion picture. The conduct targeted by the Potts, Lazarin's press conference and his Facebook posts, were indisputably made "in connection with" the circumstances of Audrie's death and "made in . . . a public forum . . . ." Lazarin linked both his interest in suicide awareness and his concerns about parental rights to the circumstances of Audrie's death.

The Potts claim that their cause of action was based solely on Lazarin's "unauthorized use of Audrie's name and likeness" and argue that such use "has nothing at all to do with" Lazarin's "constitutional right of free speech." They posit that Lazarin's statements could not be "protected" under Code of Civil Procedure section 425.16 because his statements violated Civil Code section 3344.1. The Potts misunderstand the reach of section 425.16. " 'The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the First Amendment as a matter of law. If this were the case then the [secondary] inquiry as to whether the plaintiff has established a probability of success would be superfluous.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94-95.) The moving party's step-one burden does *not* require proof that the targeted conduct was ***in fact protected by the First Amendment***. Instead, the moving party need only *make a prima facie showing*, not prove, that the targeted "statements" were made "in . . . a public forum in connection with an issue of public interest." (Code Civ. Proc., § 425.16.)

The Potts argue that their claim did not arise from Lazarin's statements made in a public forum. They seem to be under the impression that Lazarin could not satisfy his step-one burden so long as their cause of action targeted only *some of the content* of Lazarin's press conference and Facebook posts. Code of Civil Procedure section 425.16 does not require the moving party to make a word-by-word showing that his speech was protected by the First Amendment. The Potts' cause of action plainly targeted statements made by Lazarin at his public press conference at City Hall and in his Facebook posts.

8

His references to Audrie and uses of her likeness were indisputably "statements" made "in . . . a public forum *in connection with* an issue of public interest." (Italics added.) The "in connection with" language compels a rejection of the Potts' word-by-word approach. Since Lazarin satisfied his step-one burden, we proceed to step two.

## B. Step Two: The Potts Failed To Satisfy Their Burden

Once Lazarin met his burden, the burden shifted to the Potts to establish that there was a "probability" that they would "prevail" on their Civil Code section 3344.1 cause of action. (Code Civ. Proc., § 425.16.) Lazarin argues that they failed to satisfy their burden because his press conference and Facebook posts did not violate Civil Code section 3344.1.

"To establish a probability of prevailing, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.] For purposes of this inquiry, 'the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' [Citation.] In making this assessment it is 'the court's responsibility . . . to accept as true the evidence favorable to the plaintiff . . . .' [Citation.] The plaintiff need only establish that his or her claim has 'minimal merit.'" (*Soukup*, *supra*, 39 Cal.4th at p. 291.)

Civil Code section 3344.1 prohibits unauthorized use of "a deceased personality's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods, or services . . . ." (Civ. Code, § 3344.1, subd. (a).) A

9

statutory exception excludes such use from the statute's prohibition when the use is "in connection with any news, public affairs, or sports broadcast or account, or any political campaign . . . ." (Civ. Code, § 3344.1, subd. (j).) The statute also provides that "acts giving rise to liability shall be limited to the use, on or in products, merchandise, goods, or services, or the advertising or selling, or soliciting purchases of, products, merchandise, goods, or services prohibited by this section." (Civ. Code, § 3344.1, subd. (n).)

The Potts argue that Civil Code section 3344.1, despite the obvious import of its language, is not limited to "commercial activity . . . ." We cannot accept this argument. Civil Code section 3344.1 expressly limits its prohibition to the unauthorized use of a name or likeness *only* "on or in *products, merchandise, or goods*, or for purposes of *advertising or selling, or soliciting purchases of, products, merchandise, goods, or services . . . .*" (Italics added.) We cannot see how the statute could be more clear that it is limited to commercial speech. Certainly the California Supreme Court has construed the statute to be limited to commercial speech. "[T]he right of publicity cannot, consistent with the First Amendment, be a right to control the celebrity's image by censoring disagreeable portrayals." (*Comedy III Productions, Inc. v. Gary Saderup, Inc.* (2001) 25 Cal.4th 387, 403 (*Comedy III*).) "[T]he right of publicity is essentially *an economic right*. What the right of publicity holder possesses is not a right of censorship, but a right to prevent others from *misappropriating the economic value* generated by the celebrity's fame through the *merchandising* of the 'name, voice, signature, photograph, or likeness' of the celebrity." (*Id.* at p. 403, italics added.) We can only conclude that Civil Code section 3344.1's prohibition is limited to commercial speech.

When the statute is properly understood as limited to commercial speech, the Potts' evidence must be deemed inadequate. The Potts presented no evidence that Lazarin's use of Audrie's name and likeness at his press conference or in his Facebook posts "misappropriate[ed] the *economic value* generated by [Audrie's] fame *through the*

10

*merchandising*" of her name or likeness. (*Comedy III*, *supra*, 25 Cal.4th at p. 403, italics added.)

The Potts argue that any mention of Audrie's name or display of her likeness by Lazarin violated the statute because he was using her name and likeness "for purposes of advertising . . . services" (Civ. Code, § 3344.1) "to raise money . . . ." They assert that the YouCaring.com Web page used Audrie's name and likeness "for the purposes of advertising" "fundraising services," and they claim that "it does not matter whose services are involved." But the Potts' cause of action could succeed only if they could prove that Lazarin used Audrie's name and likeness to "advertis[e]" "services" within the meaning of Civil Code section 3344.1, which applies solely to commercial use. Yet the Potts produced no evidence that Lazarin's press conference or Facebook posts advertised any *services*, but only that he sought money to fund suicide prevention and parental rights advocacy. The Potts point to nothing in Lazarin's press conference (the content of which is not in the record) or his Facebook posts that identified any "services" that were being offered in exchange for money through the use of Audrie's name or likeness. The Potts' linguistic wordplay does not succeed in identifying any "services" within the meaning of Civil Code section 3344.1 that Lazarin was promoting through the use of Audrie's name or likeness.

At bottom, the Potts' Civil Code section 3344.1 cause of action depends on their claim that the statute extends its reach to solicitation of funds for advocacy. The statutory language is to the contrary. It requires that the unauthorized use relate to a transaction involving products or services, consistent with the California Supreme Court's construction of the statute as limited to commercial speech. The Potts cite no authority for the proposition that advocacy fundraising fits within the statute's limitation of its prohibition to commercial speech.

" '[O]ur cases long have protected speech even though it is in the form of . . . a solicitation to pay or contribute money . . . .' " (*Village of Schaumburg v. Citizens for a*

11

*Better Environment* (1980) 444 U.S. 620, 633 (*Schaumburg*); see also *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.* (1985) 473 U.S. 788, 799; *Riley v. National Federation of the Blind of North Carolina, Inc.* (1988) 487 U.S. 781, 796.) "[S]olicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and . . . the reality [is] that without solicitation the flow of such information and advocacy would likely cease." (*Schaumburg*, at p. 632.)

The conduct of Lazarin targeted by the Potts' cause of action involved solicitations intertwined with advocacy on public issues. Under these circumstances, that conduct cannot be deemed commercial speech. Since Civil Code section 3344.1 extends to only commercial speech, it did not apply to the conduct targeted by the Potts' Civil Code section 3344.1 cause of action. Consequently, the Potts failed to satisfy their burden, and the superior court erred in denying Lazarin's motion.

## IV. Disposition

The order denying Lazarin's motion is reversed, and the superior court is directed to enter a new order granting his motion. Lazarin shall recover his appellate costs.

_____
Mihara, J.

WE CONCUR:


_____
Premo, Acting P. J.



_____
Elia, J.




Pott v. Lazarin
H044587

13

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court |
| Trial Judge: | Honorable Mary Arand |
| Attorneys for Plaintiffs and Respondents: | Robert Edward Freitas<br>Kayla A. Odom<br>Freitas & Weinberg LLP |
| Attorney for Defendant and Appellant: | Carleton L. Briggs<br>Law Offices of Carleton L. Briggs |

Pott v. Lazarin
H044587